(INND Rev. 8/16)                                                                                                      page 1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

[This form is for prisoners to sue for civil rights violations. **NEATLY** print in ink (or type) your answers.]

-FILED-
APR 02 2019
At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Jeremy Huffman Sr.,
[You are the **PLAINTIFF**, print your full name on this line.]

v.

St. Joseph County Jail et, al,
[The **DEFENDANT** is who you are suing. Put ONE name on this line. List ALL defendants below, including this one.]

Case Number  3:19-cv-169
[For a new case in this court, leave blank. The court will assign a case number.]

[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is VERY IMPORTANT that you include it on everything you send to the court for this case. DO NOT send more than one copy of anything to the court.]

## PRISONER COMPLAINT

| # | Defendant's Name and Job Title | Work Address |
|---|---|---|
| 1 | [Put the defendant named in the caption in this box.] St. Joseph County Jail et, al | 401 W. Sample St. South Bend, IN 46601 |
| 2 | [Put the names of any other defendants in these boxes.] Sheriff Micheal Grzegorek | 401 W. Sample St. South Bend, IN 46601 |
| 3 | Christopher Hall, Physician | 3355 Douglas Rd, Suite 100 South Bend, IN 46635 |

[If you are suing more defendants, attach an additional page. Number each defendant. Put the name, job title, and work address of each defendant in a separate box as shown here.]

1. How many defendants are you suing? __14__

2. What is the name and address of your prison or jail? Federal Correctional Institution  P.O. Box 4000  Manchester, KY 40962

3. Did the event you are suing about happen there? ○ Yes.  ☒ No, it happened at: St. Joseph County Jail  401 W. Sample St.  South Bend, IN  46601

4. On what date did this event occur? From September 2016 to March 2017

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

## Additional Defendants

| Name and Job Title | Work Address |
|---|---|
| 4. Beacon Health Ventures et, al | 3355 Douglas Rd. Suite 100<br>South Bend, IN 46635 |
| 5. Nurse Lynn LNU, Head RN at St. Joseph County Jail | 401 W. Sample St.<br>South Bend, IN 46601 |
| 6. Julie Lawson, Warden at St. Joseph County Jail | 401 W. Sample St.<br>South Bend, IN 46601 |
| 7. Nurse Karen LNU, RN at St. Joseph County Jail | 401 W. Sample St.<br>South Bend, IN 46601 |
| 8. Deputy Holden, C.O. (corrections officer) at St. Joseph County Jail | 401 W. Sample St.<br>South Bend, IN 46601 |
| 9. U.S. Marshals Service et, al | Office of General Counsel<br>CG-3 15th Floor<br>Washington D.C. 20530-0001 |
| 10. Curtis LNU, U.S. Marshal | Robert A. Grant Federal Building and Courthouse<br>204 S. Main St.<br>South Bend, IN 46601 |
| 11. Nurse Jason LNU, RN at St. Joseph County Jail | 401 W. Sample St.<br>South Bend, IN 46601 |
| 12. Mrs. Coleman, Inmate Services at St. Joseph Cnty. Jail | 401 W. Sample St.<br>South Bend, IN 46601 |

# Additional Defendants

| Name and Job Title | Work Address |
|---|---|
| 13. S. Richmond, Captain at the St. Joseph County Jail. | 401 W. Sample St. South Bend, IN 46601 |
| 14. James Tieman, ~~Psychiatrist~~ Physician | 3355 Douglas Rd. South Bend, IN 46635 |

(INND Rev. 8/16)

page 2

## CLAIMS and FACTS

DO: Write a short and plain statement telling what each defendant did wrong.
DO: Use simple English words and sentences.
   DO NOT: Quote from cases or statutes, use legal terms, or make legal arguments.
DO: Explain when, where, why, and how each defendant violated your rights.
DO: Include every fact necessary to explain your case and describe your injuries or damages.
DO: Number any documents you attach and refer to them by number in your complaint.
   DO NOT: Include social security numbers, dates of birth, or the names of minors.
DO: Use each defendant's name every time you refer to that defendant.
DO: Number your paragraphs. [*The first paragraph has been numbered for you.*]

1. In September of 2016 while plaintiff, Jeremy Huffman Sr. was being held at the St. Joseph County Jail on contract for the U.S. Marshals Service, plaintiff began developing a painful mass on his left elbow. This condition was recurring and plaintiff had been successfully treated by prescription antibiotics in the past by ER doctors at St. Joseph Hospital in Mishawaka, Indiana. (Exhibit 1) Plaintiff also recieved antibiotics for this condition on his left elbow by Dr. James Tieman, defendant at the jail in approx. between 2013 and 2015. All times antibiotics were given caused the mass to go away.

2. Plaintiff sees Dr. James Tieman, defendant in October 2016 at the jail about this growth coming back. Plaintiff reminds Dr. Tieman about his past treatment of antibiotics and of plaintiffs ER visits. Dr. Tieman denied Plaintiff treatment. Plaintiff informed Dr. Chris Hall, defendant of pain and loss of function of elbow during a visit in Nov. 2016. Dr. Hall and Dr. Tieman saw the mass causing pain and obstructing movement as well as had knowledge of treatments by other Doctors for infection.

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

(INND Rev. 8/16)                                                         page 3

### Claims and Facts (continued)

3. The mass of plaintiff's left elbow quickly grew in size and increased pain into the month of November 2016. Plaintiff regularly saw nurses and Dr. Hall, defendant about the constant increase in size and pain. Plaintiff pleaded with HRN Lynn, defendant and Dr. Hall defendant about his conditions getting worse and he requested antibiotics from HRN Lynn and Dr. Hall. HRN Lynn and Dr. Hall did nothing more for plaintiff.

4. Plaintiff bumped into the wall at outside recreation in B-pod on November 17, 2016 and ruptured the mass on his left elbow internally. Plaintiff's entire arm swelled instantly and plaintiff felt an intense burning pain throughout his arm. Plaintiff and other inmates kicked the door and yelled for help from corrections staff. Deputy Holden, defendant sent plaintiff and other inmates back to unit B-4 and said he would inform medical of the emergency. Deputy Holden did nothing. Approximately four hours after the internal rupture plaintiff spoke to Nurse Andrea and she stated that medical was never made aware of the incident.

5. Nurse Andrea placed plaintiff on the list to see the doctor on the next "doctor day". Plaintiff wrote greivance on Deputy Holden on November 18, 2016 but never received response. Plaintiff wrote a greivance on this matter again on February 27, 2017. (Exhibit 2) #2)

6. Plaintiff told defendant Dr. Hall about the

[*DO NOT* write in the margins or on the back of any pages. Attach additional pages if necessary.]

Claims and Facts (continued)

rupture a few days later. Dr. Hall prescribed naproxen but still would not prescribed any antibiotics even though plaintiff continued to plead about them. Plaintiff also had new symptoms after the internal rupture on November 17, 2016. Plaintiff developed infected and inflamed hair follicles all over his left arm just over the area of the rupture. Dr. Hall offered "cream" while admitting it would not be helpful.

7. Plaintiff asked again for antibiotics and Dr. Hall said "No." Plaintiff followed up with Dr. Hall a few days later. The mass had since refilled and was quite red and swollen. Dr. Hall saw the worsening condition. Dr. Hall admitted to noticing a more significant loss in range of motion. Dr. Hall admitted to the elbow being "warm" to the touch.

8. Plaintiff began to fear that this doctor had some sort of ill feelings toward plaintiff. Plaintiff would describe his intense pain or his loss movement and Dr. Hall would just reply with "I understand."

9. In November or December plaintiff wrote the ACLU of Indiana inquiring about filing a lawsuit against the defendants and to ask for help getting treated. The ACLU responded in February 2017. (Exhibit 3)

10. Plaintiff made a sling out of a towel and would where this homemade device at times when pain and discomfort were too great.

11. Dr. Hall's alternating prescriptions of ibuprofen and naproxen were not helping anymore. Plaintiff continued to take whatever Dr. Hall would prescribe as well as extra pain meds from the nurses cart and commisary meds.

## Claims and Facts (continued)

12. The U.S. Marshals Service took plaintiff for a MRI in December 2016. (Exhibit 4) Plaintiff never heard anything about the findings of this MRI.

13. Plaintiff continued to report worsening symtoms to medical and continued to see HRN Lynn and Dr. Hall. Plaintiff cried and begged Dr. Hall for antibiotics or for an ER visit. Dr. Hall would just say he could not give plaintiff antibiotics or outside care without approval from the Feds. Some medical request slips provided here in (Exhibit 5)

14. Despite all the signs of serious infection as well as documented prior treatments of possible infection in plaintiff's left elbow, plaintiff was denied antibiotics. Defendants Nurse Lynn and Dr. Hall blatantly ignored plaintiff's risk of being harmed by infection.

15. On February 7, 2017 plaintiff was taken for a biopsy of left elbow mass. Biopsy resulted in positive findings for staph. (Exhibit 6) AND James Tiernan

16. Defendants Curtis LNU of the U.S Marshal Service, the U.S. Marshals Service et, al, St. Joseph County Jail et, al, Sheriff Michael Grzegorek, Dr. Christopher Hall, HRN Lynn, Beacon Health Ventures et, al, Warden Julie Lawson, Nurse Karen LNU all ignored these results; These defendants chose not to obtain these results; These defendants denied urgent medical care to plaintiff after lab tests showed the presence of staph.

17. Plaintiff was never made aware of these results. Plaintiff continued to complain of increased pain and swelling. Plaintiff wrote greivances on medical staff, Warden Julie Lawson, and Deputy Holden.

Claims and Facts (continued)

18. Plaintiff wrote these greivances on 2/27/17. (Exhibit 2 #1, 2 and 4)

19. On March 10, 2017, the mass inside plaintiffs left elbow ruptured internally for the second time flooding plaintiffs' entire arm with extreme pain and burning. Plaintiff hit the "panic" button in his cell (#B411). Corrections officer Rauen escorted plaintiff to medical. Medical staff (two unknown nurses) saw plaintiffs' swollen arm was discolored. Nurses set up Doctor appointment for March 11, 2017.

20. On March 11, 2017 Dr. Chris Hall, defendant was going to perform what was referred to as an "exploritory aspiration" at the medical wing in the St. Joseph County Jail. Plaintiffs entire arm was swollen and discolored from armpit to fingertips and was extremely painful. Plaintiff asked that the procedure be observed by a Lieutenant and a Sergeant. Lieutenant Holvoet and Sergeant Moya came with plaintiff into Dr. Hall's office. Nurse Stephanie was present. Dr. Hall did not want to do the procedure observed. Again, Dr. Hall denied plaintiff any further care.

21. Dr. Hall stated that he would try and schedule an appointment with a speciallist! Plaintiffs arm resembled that of a decomposing body.

22. On March 12, 2017 plaintiff awoke in his cell with a foul smelling discharge and blood saturating his left side. Blood and thick chunks of discharge was coming from a dime- sized hole on the back of plaintiffs left elbow.

## Claims and Facts (continued)

Plaintiff's arm was multi-colored from green, purple, yellow, grey and even almost black. Plaintiff saw Nurse Latoya at the B-pod door for morning med pass and showed her the hole in his arm and the saturated shirt he was wearing. Nurse Latoya told plaintiff that she would call Dr. Hall and inform him.

23. Plaintiff cut the toe end of a sock off and slid it on his arm with some toilet paper so that he could go to chapel for Sunday mass. Plaintiff showed his arm to the volunteer Church Deacon, who is also a medical doctor. The deacon was surprised to hear plaintiff was not being given antibiotics. Deacon Greg wrote a short note on a yellow piece of paper for plaintiff to give jail officials in hopes of motivating them to do something further. (Exhibit 7)

24. During church on March 12, 2017 corrections staff pulled plaintiff out to take him to the ER at Memorial Hospital of South Bend. Dr. Monika Niemiec, in the ER asked plaintiff why this was allowed to progress so much. Dr. Niemiec immediately placed plaintiff on IV narcotic pain meds and IV antibiotics. Plaintiff told Dr. Niemiec that he was not taking any antibiotics and she asked "Why not?" and Dr. Niemiec stated that there was a positive finding for staph back in February and that this could have been avoided.

25. Plaintiff was scheduled for surgery that evening but wasn't taken into the O.R. until the following morning. On March 13, 2017 plaintiff was placed under anesthesia to have infectious dead tissue and

Claims and Facts (continued)

muscle removed. (Exhibit 8) After surgery, the wound was left open with a wound VAC in place. The wound was approximately 6" long and 3½" wide, on the back of plaintiff's left elbow. So much of plaintiff's tissue was removed that bone and tendon were left exposed.

26. Plaintiff was hospitalized for 32 days. Wound VAC dressing changes were frequent and very painful, despite IV dilaudid and morphine. Plaintiff suffered extreme constipation. Plaintiff had to get a shot in the abdomen daily to prevent ~~blood~~ blood clots. (Exhibit 8)

27. Plaintiff signed a release for medical charts to be shipped to him at the St. Joseph County Jail. The jail rejected this package. Mrs. Hahn, corrections officer who is in charge of mail told plaintiff that it was probably rejected because they thought it was from Amazon. (Some documents pertaining to this in Exhibit 9)

28. Upon information and belief, this rejection of medical records was the first of many attempts to hinder plaintiff's persuit of documentation needed to back up his story about being deprived of ~~illegible~~ medical care.

29. After plaintiff's return to the St. Joseph County Jail from the hospital he began persuing legal counsel by way of mail. Plaintiff wrote the Sergeant (Mrs. Fisher) and asked to have greivances pertaining to plaintiff's left elbow condition. Sgt. Fisher responded and said one greivance was returned on 3/1/17 and another on 3/14/17. Plaintiff never recieved

Claims and Facts (continued)

a response to any greivance on 3/1/17, and on 3/14/17 plaintiff was in the hospital. (Exhibit 10)

30. Greivance GV 2-17-120 was returned on 4/27/17. (Exhibit 2, #1) Plaintiff wrote a request for a copy of greivance GV 2-17-119. A copy was given on 4/28/17. (Exhibit 11 and Exhibit 2, #2) Plaintiff was trying to collect documentation in order to get a lawyer to help with litigation.

31. Plaintiff requested that HRN Lynn, defendant give him the dates that plaintiff saw Dr. Hall at the jail. Warden Julie Lawson, defendant responded to the request that plaintiff addressed to HRN Lynn. (Exhibit 12)

32. Plaintiff wrote a greivance on 7/11/17 on Deputy Fettig and Nurse Jason for denying him an urgent dressing change on 7/8/17. Plaintiff had the date on the greivance wrong as this occurance was actually on 7/9/17. Plaintiff referrs to this greivance for a few reasons; to show that HRN Lynn has access to (Exhibit 13) the computer log that shows custody movement; also HRN Lynn was aware of newly developing complications to plaintiffs wound. Plaintiff suggested that the premature discontinuation of the ACE wrap was to blame. Plaintiff sent requests to classification to request being housed back in medical so he could continue his ACE wrap orders from speciallist. No response given. Plaintiff filed a greivance

## Claims and Facts (continued)

objecting to this classification change because his tissue atop the newly formed flesh on his left arm was becoming irritated and dry. The lack of an ACE wrap was allowing the dampened gauze to sit off of the scar. The tape was not sufficient in holding the wet gauze firmly onto the still open flesh. The "wet to dry" dressing was not fully effective with merely tape holding it in place. Plaintiff never recieved a response to request or greivence pertaining to the ACE wrap and the housing change so plaintiff wrote another greivance on 7/11/17. Since plaintiff was placed in general population and his ACE wrap was taken. plaintiff feared new infection as his wound was becoming red and inflamed. Plaintiff wrote his new greivence against medical staff and classification officers stating that due to their re-classifying him and taking his ACE wrap his wound is not healing properly. (Exhibit 2#3) HRN Lynn, defendant responded by telling lies to avoid giving plaintiff proper care. HRN Lynn stated that plaintiff's speciallist never provided them with an order for an ACE wrap after the wound VAC was discontinued. She stated that the ACE wrap was not ordered by the speciallist when he ordered the change to wet to dry dressings. The speciallist's order states exactly the opposite. HRN Lynn's callous

Claims and Facts

indifference here caused unnecessary pain for plaintiff, anxiety and fear. This blatant refusal of adequate medical care by HRN Lynn also contributed to poor healing of the plaintiff's wound. See specialist's orders (Exhibit 29) and correlate with (Exhibit 2, #3)

33. On 7/28/17 plaintiff requested the dates he was seen by Dr. Hall at the jail since the start of 2016. Plaintiff requested this information from HRN Lynn, defendant. HRN Lynn responded by stating that plaintiff will have to have an attorney subpoena the records. (Exhibit 14)

34. Also on 7/28/17 plaintiff requests these dates from Warden Julie Lawson, defendant. Plaintiff also confronted Julie Lawson about her seemingly ignorant response on (Exhibit 12). Warden Lawson responded by stating that the records are all the property of Beacon, defendant. Plaintiff was asking for dates from the computer log that HRN Lynn referred him to. Upon information and belief Julie Lawson, again, was being deliberately ignorant to slow plaintiff's gathering evidence. (See Exhibit 15) HRN Lynn denied having access on her end and pointed plaintiff to custody staff and Julie Lawson pointed back to medical.

35. On 7/20/17, plaintiff wrote a request to medical requesting a P.M. dressing change. Plaintiff had specialist's orders for twice a day changes. Plaintiff skipped many A.M. changes because of debilitating depression. Plaintiff skipped his

Claims and Facts (continued)

A.M. dressing change that morning. HRN Lynn responded by stating once a day dressing changes are in the morning. HRN Lynn knew plaintiff was supposed to have twice a day dressing changes and she refused plaintiff's P.M. change. (Exhibit 16)

36. On 8/15/17 plaintiff sent another request to HRN Lynn requesting just the dates plaintiff was seen by the doctor at the jail since the beginning of 2016. HRN Lynn responded by stating that the dates are logged into a computer system that custody staff and not medical personel have access to. (Exhibit 17) This is the same system HRN referred to in exhibit 13 when she stated information from this computer system as if she had access to it.

37. On 7/5/17 Plaintiff sent a request to Mrs. Coleman of inmate services asking her to provide plaintiff with tort claim papers and 42 section 1983 civil suit papers. Plaintiff also requested that Mrs. Coleman take him to make some copies. Normally Mrs. Coleman takes the inmate needing copies and accompanies them to the copy machine inside inmate services or to the booking area where there is another machine.

38. Mrs. Coleman asked plaintiff if she could take his documents with her to copy them. Plaintiff refused. The documents pertained to the tort claim and lawsuit he was trying to file against the jail officials and plaintiff didn't want anything getting "lost." (Exhibit 18)

Claims and Facts (continued)

39. In approximately July, plaintiff was escorted by Mrs. Coleman to make copies of the tort claim and other things pertaining to the case. Plaintiff sent out the tort claim against the jail and the sheriffs department via certified mail by plaintiff's criminal defense attorney, from his office in LaPorte, IN on July 31, 2017. Plaintiff had the certified mail receipts from these documents being sent out by his lawyer. (see Exhibit 19)

40. Plaintiff was really attempting to find and attorney to help him take this damages case against the defendants so making copies was essential for security purposes and in aiding plaintiff in showing the case to Law Firms.

41. On 8/15/17 plaintiff requested paperwork from Mrs. Coleman at Inmate Services for filing for the Freedom of Information Act. Mrs. Coleman responded by stating that she knew nothing about the freedom of Information Act or the papers. (Exhibit 20)

42. On 8/15/17 plaintiff asked via request slip for Mrs. Coleman to take him to make copies. This request was never answered or returned. On 8/16/17 plaintiff sent out another request for copies. Mrs. Coleman escorted plaintiff to inmate services to make copies. Once Mrs.

Claims and Facts (continued)

Coleman observed the papers plaintiff wanted copied she refused to make copies. Plaintiff was sent back to A-5 but kept copy receipt that was never finished by Mrs. Coleman. (Exhibit 21)

43. Also on 8/16/17 plaintiff sent a request to Mrs. Coleman requesting that she refuse his access to the copy machine in writing. Mrs. Coleman responded on a blank request slip by saying that she lost the request slip that she originally denied plaintiff copies on. (Exhibit 22)

44. Also on 8/16/17 plaintiff asked Mrs. Coleman to allow him to make copies of legal documents. This request was after Mrs. Coleman denied plaintiff copies with the reason being that plaintiffs papers were not considered legal documents by Mrs. Coleman. Plaintiff was wanting to make copies of the certified mail receipts from the tort claim against the jail and Sheriffs office the plaintiff filed. Mrs. Coleman pulled plaintiff out of A-5 to tell him that certified mail receipts are not legal documents and that she would not make anymore copies for plaintiff. Plaintiff's final written request for copies was returned on 8/16/17 with no response from Mrs. Coleman. (Exhibit 23)

Claims and Facts (continued)

45. Plaintiff wrote a greivance on Mrs Coleman of inmate services on 8/16/17 for denying plaintiff's access to the copy machine. Greivance GV 8-17-84 was duplicated by hand by the plaintiff before he turned it in because there was a pattern of paperwork pertaining to plaintiff's medical care at the jail disappearing or being lost. (Exhibit 24) This greivance was answered by Captain S. Richmond, defendant on 8/18/17. Captain Richmond stated that the copy machine is only to be used by inmates only for things related to their current offenses. Captain Richmond also stated that certified mail receipts are not legal documents. (Exhibit 25)

46. On 8/17/17 wrote a request to Mrs. Coleman to ask for an explanation as to why certified mail receipts were not considered legal documents. Mrs. Coleman told plaintiff to write to the warden or the assistant warden about the matter. (Exhibit 26)

47. On 8/25/17 plaintiff was transferred out of the St. Joseph County Jail by the U.S. Marshals Service to await trial and sentencing at another local jail called the Elkhart County Corrections Center.

48. Plaintiff suffered excrutiating pain, misery, anxiety, dread and fear during these times at the St. Joseph County Jail. Plaintiff reasonably feared for his life!

Claims and Facts (continued)

49. Plaintiff now suffers from chronic pain and discomfort that will likely plague him for the rest of his life. Due to the gross negligence and deprivation of plaintiff's rights as an American citizen outlined in this complaint, plaintiff has lost his bursa sac from his left elbow. As a result, many movements hurt and pushup, although possible, are painful.

50. Plaintiff has lost flexibility, strength, and balance of musculature and skeleton as a result of the acts and omissions mentioned in this complaint. Plaintiff has serious disfigurement of his left arm caused by the acts and omissions complained of herein. Plaintiff has lost much of the enjoyment of life.

51. Plaintiff filed a tort claim against the St. Joseph County Jail and Sheriff's Department. Lawyers that represent them responded and denied liability. (Exhibit 27)

52. Plaintiff filed a tort claim against the U.S. Marshals Service. Gerald M. Auerbach, General Counsel responded on behalf of the Marshals and denied liability. (See Exhibit 28)

(INND Rev. 8/16)

page 4

5. When did this event happen?
   - ○ Before I was confined.
   - ☒ While I was confined awaiting trial.
   - ○ After I was convicted while confined serving the sentence.
   - ○ Other: _____

6. Have you ever sued anyone for this exact same event?
   - ☒ No.
   - ○ Yes, attached is a copy of the final judgment OR an additional sheet listing the court, case number, file date, judgment date, and result of the previous case(s).

7. Could you have used a prison grievance system to complain about this event?
   - ○ No, this event did not happen in a prison or jail.
   - ○ No, this event is not grievable at the prison or jail where it occurred.
   - ☒ Yes, I filed a grievance and attached is a copy of the response from the final step. (Exhibit 2 and 25)
   - ○ Yes, this event was grievable, but I did not file a grievance because _____

8. If you win this case, what do you want the court to order the defendant(s) to do?
   [NOTE: A case filed on this form will not overturn your conviction or change your release date.]

   Plaintiff asks that the defendants be ordered to pay him compensatory and punitive damages in the amount of $10,000,000.00 and that medical care for inmates at the St. Joseph County Jail be given at the standard levels set forth by the Constitution of the United States of America.

[Initial Each Statement]
   - _JH_ I will pre-pay the filing fee OR file a prisoner motion to proceed in forma pauperis.
   - _JH_ I will keep a copy of this complaint for my records.
   - _JH_ I will promptly notify the court of any change of address.
   - _JH_ I declare under penalty of perjury that the statements in this complaint are true.

I placed this complaint in the prison mail system on _3_/_29_/20_19_ at _11:30_ am/(pm).
[Do not fill in this date and time until you give the complaint to prison officials to send to the court.]

_____        _16508-027_
Signature                                Prisoner Number

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]