UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEREMY HUFFMAN, SR., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-169-JD-MGG |
| ST. JOSEPH COUNTY JAIL, et al., | |
| Defendants. | |

OPINION AND ORDER

Jeremy Huffman, Sr., a prisoner without a lawyer, filed an amended complaint against fourteen defendants. ECF 6. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Huffman alleges that, in September 2016, while he was housed at the St. Joseph County Jail, he developed a painful mass or growth on his left elbow.[1] ECF 6 at 4. He

---

[1] Huffman tendered his amended complaint to prison officials for filing on March 29, 2019. ECF 6. The conduct at issue in this case occurred from September 2016 to August 2017, which raises a concern about whether some of his claims may be barred by the two-year statute of limitations applicable to 28 U.S.C. § 1983 cases. *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001). However, because it is not clear from the face of the amended complaint that the conduct is time-barred, dismissal at the screening stage on this ground is not appropriate. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

states the mass developed several years earlier and, when it recurred, he was prescribed antibiotics, and it went away.

By October 2016, the mass had returned, and Huffman saw Dr. James Tieman, a prison doctor. ECF 6 at 4. He states he reminded Dr. Tieman he previously gave him antibiotics to treat the mass and had been sent to the local hospital where emergency room doctors had also prescribed antibiotics. *Id*. About a month later, in November 2016, Huffman saw Dr. Christopher Hall, another prison doctor, and reported that the mass was painful and obstructed movement of his elbow. *Id*. He claims that both Drs. Tieman and Hall knew he needed treatment for the mass, but they would not provide it even though the mass was very painful, continued to grow in size, and hindered his ability to move his arm. *Id*. at 4-5. Huffman asserts he pleaded with Dr. Hall and also with Head Nurse Lynn about his worsening condition, but they would not prescribe antibiotics or do anything else to help him. *Id*.

Huffman next claims that, on November 17, 2016, after bumping into a wall during outside recreation, the mass ruptured internally, causing intense swelling, pain, and burning in his arm. ECF 6 at 5. He states that he and other inmates then kicked the door of the recreational area and yelled for help. *Id*. Deputy Holden responded and sent Huffman and the other inmates back to their unit and told Huffman he would inform the medical staff about the situation. *Id*. However, Huffman asserts he later learned that the medical unit did not know anything about the incident. *Id*. Huffman was placed on

the list to see a doctor and, on November 18, 2016, Huffman filed a grievance against Deputy Holden, but he never received a response to his grievance.[2] *Id*.

A few days later, in November 2016, Huffman saw Dr. Hall and told him about the ruptured mass. ECF 6 at 5-6. Dr. Hall prescribed Naproxen but would not prescribe antibiotics even though Huffman pleaded with him to prescribe them. *Id*. at 6. Because Huffman had also developed infected and inflamed hair follicles on his arm near the rupture, Dr. Hall prescribed a cream even though he did not think it would be very helpful. *Id*.

Toward the end of November 2016, Huffman followed up with Dr. Hall. ECF 6 at 6. He requested antibiotics but Dr. Hall refused to prescribe them even though the mass was filled with fluid, red, and swollen. *Id*. Dr. Hall observed that Huffman's condition continued to get worse and his range of motion was significantly limited. *Id*. He noted that Huffman's elbow was warm to the touch. *Id*. Huffman described his intense pain and loss of movement, but Dr. Hall simply responded with "I understand." He alleges he continued to take his prescribed medications along with medications he was able to get from the nurse's cart and commissary. *Id*. Huffman made a sling out of a towel and wore it when his pain and discomfort were too great. *Id*.

---

[2] To the extent Huffman is suing Deputy Holden because he failed to respond to his grievance, Huffman has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure). Therefore, he may not proceed against Deputy Holden.

In December 2016, Huffman reported to Dr. Hall and Head Nurse Lynn that his symptoms were more severe. ECF 6 at 7. He asserts he begged Dr. Hall to prescribe antibiotics or send him to the emergency room, but he would not do so. *Id*. Huffman had an MRI of his left arm; however, he never received the results. *Id*. He claims Dr. Hall and Head Nurse Lynn blatantly ignored his risk of being harmed by the infection in his arm. *Id*.

Two months later, on February 7, 2017, Huffman had a biopsy of the mass on his left elbow. ECF 6 at 7. He asserts he was never given the biopsy results, which showed he had a staph infection. *Id*.

On March 10, 2017, Huffman's mass ruptured internally for the second time. ECF 6 at 8. After he pushed the panic button in his cell, a prison officer escorted him to the medical unit. *Id*. Because his arm was painful, swollen, and discolored, an appointment to see a doctor was scheduled for the following day. *Id*.

The next day, on March 11, 2017, Dr. Hall scheduled an exploratory aspiration of Huffman's left arm. ECF 6 at 8. Huffman requested that two prison officers observe the procedure, but Dr. Hall denied his request. *Id*. He claims that Dr. Hall then refused to provide him with medical care but indicated he would schedule an appointment with a specialist. *Id*.

On March 12, 2017, Huffman asserts that, when he woke up, he noticed there was a foul smelling, bloody discharge coming from a "dime-sized hole" on the back of his left elbow. ECF 6 at 8. His arm had turned green, purple, yellow, grey, and almost black. *Id*. at 9. Huffman asked for a medical pass and, after showing a nurse the hole in

4

his left arm and his blood saturated shirt, she contacted Dr. Hall. *Id*. Huffman was then transported to the hospital for treatment. *Id*.

At the hospital, doctors told Huffman he had a staph infection and he was given intravenous antibiotics and pain medication. ECF 6 at 9. He had surgery to remove the infectious dead tissue and muscle from his left arm. *Id*. at 9-10. After the surgery, the wound was left open with a vacuum-assisted closure to help it heal. *Id*. at 10. Huffman represents the wound was six inches long and three and one-half inches wide and his bone and tendon were exposed because of the amount of tissue that had been removed. *Id*. He endured frequent and painful dressing changes, constipation, and daily shots in his abdomen to prevent blood clots. *Id*. Huffman was hospitalized for a total of 32 days. *Id*.

Because Huffman was a pretrial detainee at the time of this incident, his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (*citing Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*. *Id*. The Seventh Circuit has explained that the inquiry for assessing a due process challenge to a pretrial detainee's medical care entails two steps. *Id*. at 353. The first step, which focuses on the intentional conduct of the defendants, "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case." *Id*. A showing of negligence or even gross negligence does not suffice. *Id*. The second step asks whether the challenged conduct was

5

objectively reasonable. *Id.* at 354. The objective reasonableness standard requires more than medical malpractice and "the state-of-mind-requirement for constitutional cases remains higher." *Id.* at 353. Giving Huffman the inferences to which he is entitled at this stage, he has stated a plausible claim against Drs. Hall and Tieman, and Head Nurse Lynn for inadequate medical care related to the mass on his left elbow, from October 2016 through March 2017, in violation of the Fourteenth Amendment.

Huffman has also sued St. Joseph County Jail, Sheriff Michael Grzegorek, Dr. Hall, Beacon Health Ventures, Head Nurse Lynn, Warden Julie Lawson, Nurse Karen, the United States Marshals Service, United States Marshal Curtis, and Dr. Tieman for denying him urgent medical care. ECF 6 at 7. He asserts these defendants knew in February 2017, that his biopsy results showed he had a staph infection. *Id.* However, they refused to provide him with medical care. *Id.* Given Huffman the inferences to which he is entitled at this stage, he has stated a plausible claim against Drs. Hall and Tieman, and Head Nurse Lynn for inadequate medical care in February 2017, after the results of the biopsy showed he had a staph infection, in violation of the Fourteenth Amendment.

To the extent, Huffman alleges that Sheriff Michael Grzegorek, Warden Julie Lawson, and Nurse Karen denied him urgent care, he has not alleged that they were personally involved in his medical care. ECF 6 at 7. A § 1983 lawsuit brought against an individual requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Because

6

these defendants were not personally involved in Huffman's medical care, he cannot proceed against them.

Additionally, Huffman has sued United States Marshal Curtis and the United States Marshals Service alleging they too failed to provide him with urgent medical care in violation of the Fourteenth Amendment. ECF 6 at 7. "In *Bivens* [*v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394 (1971)] the Supreme Court recognized an implied cause of action for damages against federal officers to redress a constitutional violation." *Engel v. Buchan*, 710 F.3d 698, 703 (7th Cir. 2013). But, "a defendant cannot be liable under *Bivens* on a theory of *respondeat superior* or supervisory liability, rather, there must be individual participation and involvement by the defendant.... each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (internal citations omitted). Here, Huffman has not shown that United States Marshal Curtis was personally involved in his medical care. And neither United States Marshal Curtis nor the United States Marshals Service can be liable on the basis of *respondeat superior* or supervisory liability. Therefore, he cannot proceed against these defendants.

Furthermore, Huffman has sued Beacon Health Ventures, a corporate entity that provides medical care to inmates because he was denied urgent medical care. ECF 6 at 7. Huffman attempts to hold the company liable because it employs the Jail's medical staff. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under

7

§ 1983 for its employees' deprivations of others' civil rights."). Because Huffman's allegations against Beacon Health Ventures are based only on the medical staff's lack of treatment, he has not stated a claim.

Finally, Huffman has sued the St. Joseph County Jail alleging the Jail also denied him urgent medical care. ECF 6 at 7. The St. Joseph County Jail is a building and not a suable entity. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Therefore, Huffman cannot proceed against the St. Joseph County Jail.

After Huffman returned to the Jail, he pursued his legal options regarding his medical care. On July 5, 2017, he sent Mrs. Coleman in inmate services a request for documents to file a civil rights lawsuit. ECF 6 at 14. Huffman also asked Mrs. Coleman to escort him to the copy room so that he could make copies of the documents. *Id*. Mrs. Coleman offered to make the copies for Huffman, but he did not want to give his documents to Mrs. Coleman because he feared they would get lost. *Id*. Because Huffman is suing Mrs. Coleman simply because she offered to make copies of the documents, he has failed to allege a constitutional violation. Therefore, he cannot proceed against Mrs. Coleman.

On July 9, 2017, Huffman requested that his dressing be changed because he had complications from his surgery and his wound was not healing properly. ECF 6 at 11-12. He requested an Ace wrap from both Head Nurse Lynn and Nurse Jason. *Id*. They refused to give him an Ace wrap because his doctor had prescribed only "wet to dry" dressings. *Id*. However, Huffman claims his doctor prescribed Ace wraps. *Id*. at 12-13. Furthermore, on July 20, 2017, Head Nurse Lynn refused to provide him with a second

8

dressing even though his doctor ordered two dressing changes per day. *Id*. at 13-14. Giving Huffman the inferences to which he is entitled at this stage, he has stated a plausible claim against Head Nurse Lynn and Nurse Jason for inadequate medical care in July 2017, in violation of the Fourteenth Amendment.

At the end of July 2017, Huffman asked Head Nurse Lynn and Warden Julie Lawson for the dates Dr. Hall provided him with treatment. ECF 6 at 13. He asserts, however, that they would not provide him with this information. *Id*. These allegations do not rise to the level of a constitutional violation.

In August 2017, Huffman alleges that he asked Mrs. Coleman to provide him with paperwork pertaining to the Freedom of Information Act, but she told him she did not know anything about the Act or the paperwork. ECF 6 at 15. He further asserts that he sent Mrs. Coleman a request to copy several documents but she refused to make copies when she saw the documents he wanted copied. *Id*. at 15-16. Huffman claims he asked Mrs. Coleman if he could make the copies himself but she refused his request because the documents were not legal documents. *Id*. at 16. Because Huffman does not have a federal constitutional right to make photocopies, he cannot proceed against Mrs. Coleman. *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983) (prisoners have no general constitutional right to photocopying services). Furthermore, Huffman has not asserted that being denied copying services prevented him from exercising his constitutional right of access to the courts.

As a final matter, Huffman states he filed a grievance against Mrs. Coleman for denying him access to the copy machine. ECF 6 at 17. Captain S. Richmond reviewed

Huffman's grievance and denied it stating that "[i]nmate services is not a photo-copy service for documents unrelated to an inmate's current criminal matters." ECF 1-1 at 128. As stated, Huffman has no constitutional right to access the grievance process. *See Grieveson*, 538 F.3d at 770 (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure). Therefore, he may not proceed against Captain S. Richmond.

For these reasons, the court:

(1) GRANTS Jeremy Huffman, Sr. leave to proceed against Dr. Christopher Hall in his individual capacity for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care for his mass on his left elbow from November 2016 through March 2017, as required by the Fourteenth Amendment;

(2) GRANTS Jeremy Huffman, Sr. leave to proceed against Dr. James Tieman in his individual capacity for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care for the mass on his left elbow from October 2016 through November 2016, as required by the Fourteenth Amendment;

(3) GRANTS Jeremy Huffman, Sr. leave to proceed against Head Nurse Lynn in her individual capacity for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care for the mass on his left elbow from November 2016 through December 2016, as required by the Fourteenth Amendment;

(4) GRANTS Jeremy Huffman. Sr. leave to proceed against Dr. Christopher Hall, Dr. James Tieman, and Head Nurse Lynn for denying him constitutionally adequate

medical care in February 2017, after the results of his biopsy showed he had a staph infection, as required by the Fourteenth Amendment;

(5) GRANTS Jeremy Huffman, Sr. leave to proceed again Head Nurse Lynn in her individual capacity for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care when she refused to provide him with an Ace wrap on July 9, 2017, and also when she refused to provide him with a second dressing change on July 20, 2017, as required by the Fourteenth Amendment;

(6) GRANTS Jeremy Huffman, Sr. leave to proceed against Nurse Jason in his individual capacity for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care when he refused to provide him with an Ace wrap on July 9, 2017, as required by the Fourteenth Amendment;

(7) DISMISSES all other claims;

(8) DISMISSES St. Joseph County Jail, Sheriff Michael Grzegorek, Beacon Health Ventures, Warden Julie Lawson, Nurse Karen, Deputy Holden, United States Marshals Service, United States Marshal Curtis, Mrs. Coleman, and Captain S. Richmond;

(9) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Dr. Christopher Hall, Dr. James Tieman, Head Nurse Lynn, and Nurse Jason at the St. Joseph County Jail with a copy of this order and amended complaint (ECF 6), pursuant to 28 U.S.C. § 1915(d);

(10) ORDERS the St. Joseph County Jail to provide the United States Marshals Service with the full name, date of birth, social security number, last employment date,

work location, and last known home address of any defendant that does not waive service, if it has such information; and

(11) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Christopher Hall, Dr. James Tieman, Head Nurse Lynn, and Nurse Jason respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 21, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT